UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACQUELINE B.,[1]

Plaintiff,

Case # 23-CV-6376-FPG

v.

DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

Plaintiff Jacqueline B. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 12. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

On January 30, 2017, Jacqueline B. ("Plaintiff") protectively filed an application for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 161, 165. She alleged disability since November 10, 2016. *Id.* The claims were initially denied on June 2, 2017. Tr. 86. Thereafter,

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

Plaintiff filed a written request for a hearing on June 22, 2017. Tr. 94. On October 18, 2018, Administrative Law Judge Susan Smith ("the ALJ") held a video hearing, *id.*, and on April 18, 2019, she issued a decision finding that Plaintiff was not disabled. Tr. 15-25. The Appeals Council denied review, Tr. 1-6, and Plaintiff appealed to the United States District Court. *See* Tr. 1459. The parties stipulated to remand the matter. *Id.* On February 16, 2022, the Appeals Council remanded the matter for further evaluation of the medical opinion evidence and Plaintiff's mental impairments. Tr. 1468-71. On September 30, 2022, Plaintiff amended her claim to a closed period of November 10, 2016 to December 31, 2019. Tr. 1580. On November 9, 2022, ALJ Susan Smith held an online video hearing. Tr. 1400. On March 7, 2023, the ALJ issued a decision finding Plaintiff not disabled. Tr. 1400-23. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007). "Substantial evidence is more than a mere scintilla. It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

## I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of November 10, 2016 to December 31, 2019. Tr. 1403. At step two, the ALJ found that Plaintiff suffered from severe impairments of pelvic dysfunction with myofascial pain syndrome, obesity, depressive disorder, anxiety disorder, and obsessive-compulsive disorder ("OCD"). *Id*. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 1404.

Next, the ALJ determined that Plaintiff had the RFC to perform light work except that she could stand and walk a combined total of four hours in an eight-hour workday; could occasionally climb stairs and ramps, stoop, kneel, balance, crouch, and crawl; could never climb ladders, ropes, or scaffolds; could not have concentrated exposure to workplace hazards, including dangerous moving machinery, uneven terrain, and unprotected heights; could do simple routine repetitive tasks involving occasional contact with coworkers, supervisors, and the general public; and could do low stress jobs, defined as no high volume production quotas or fast-paced assembly. Tr. 1406. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 1421. At step five, the ALJ found that given her age, education, work experience, and RFC, there were

jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 1422. The ALJ therefore found that Plaintiff was not disabled. *Id.*

## II. Analysis

Plaintiff argues that remand is warranted because (1) the ALJ crafted the mental RFC based on her own lay interpretation of the evidence, and (2) the ALJ did not provide good reasons for rejecting the opinion of Plaintiff's primary care physician, Dr. Chanh Huynh. ECF No. 7-1 at 1.

### a. Lay Opinion

First, Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ relied on her own lay interpretation of the evidence. ECF No. 7-1 at 17. Specifically, Plaintiff argues that the ALJ (1) did not rely on any specific medical opinion in order to formulate the mental RFC, *id.* at 19-21; and (2) failed to provide a function-by-function analysis of Plaintiff's work capacity, *id*. at 21.[4]

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277, 2020 WL 6886557 at *5 (W.D.N.Y. Nov. 24, 2020) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle her to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021).

Here, Plaintiff claims that the mental RFC was not supported by substantial evidence because the ALJ "did not give controlling weight to any of the medical opinions regarding

[4] To the extent Plaintiff argues that it was unclear how the ALJ reached her specific conclusions in the RFC determination, ECF No. 7-1 at 21, Plaintiff does not specify anything about the RFC determination that was unclear. Absent an identification of the specific conclusions that are allegedly unclear, the Court cannot determine the merits of the argument. Therefore, remand is not warranted.

Plaintiff's mental health." ECF No. 7-1 at 17. The Court disagrees. "The law is quite settled that a medical opinion is not required to formulate an RFC, as it is an administrative finding, not a medical finding." *Philip M. v. Comm'r of Soc. Sec*, No. 25-CV-00094, 2026 WL 1279105, at *6 (W.D.N.Y. May 11, 2026). Therefore, where the record contains sufficient information for the ALJ to formulate a mental RFC supported by substantial evidence, remand is not warranted on the basis that the ALJ did not rely on a medical opinion. *Id.*

In crafting the RFC, the ALJ relied on records from Dr. Thangathurai, Plaintiff's primary care provider, who noted that Plaintiff's attention and concentration were normal. Tr. 1408. The ALJ also relied on Plaintiff's gynecologist, Dr. Scott, who documented that Plaintiff reported finding her behavioral health session and medications helpful, and that she was "doing okay" following a breakup. *Id.* The ALJ also relied on several Patient Health Questionnaire-9s ("PHQ-9") that were administered to Plaintiff in order to assess her depression and noted that the majority of Plaintiff's PHQ-9s showed a "moderate or less range" for depression. Tr. 1413. The ALJ also referenced the records of Dr. Kilthau, who managed Plaintiff's psychiatric medications, and who found Plaintiff responded well to an increased dosage, that she denied side effects, and that she had "more manageable symptoms." *Id.* The ALJ also relied on reports from primary care provider Dr. Klymochko, who noted that after he changed Plaintiff's medications, Plaintiff had a euthymic affect in therapy. Tr. 1409, 1418.

In relying on records from Plaintiff's doctors such as her primary care provider, gynecologist, psychiatrist, and Plaintiff's mental health questionnaires, among other evidence, the ALJ found that the record failed to support that Plaintiff had significant mental impairments, given that Plaintiff seemed to respond well to medication, was for a majority of the time in the "moderate or less range" for depression in her PHQ-9s, responded well to behavioral health sessions, had

normal attention and concentration, and had euthymic affect following a change in her medications. Tr. 1408-09, 1413. Therefore, the Court concludes that the ALJ's mental RFC determination was supported by substantial evidence, and remand is not warranted.

To the extent that Plaintiff argues that a function-by-function analysis of Plaintiff's work-related capacity was required, ECF No. 7-1 at 21, that argument is similarly unavailing. The Second Circuit has noted that "[w]here an ALJ's analysis . . . regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." *Domm v. Colvin*, 579 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quoting *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013)). For the same reasons as described above, the Court concludes that the mental RFC was supported by substantial evidence. Consequently, the ALJ provided an adequate basis for meaningful judicial review and applied the proper legal standard. Thus, remand is not warranted on this basis.

**b. Treating Physician**

Next, Plaintiff argues that the ALJ erred by failing to provide "good reasons" for declining to give controlling weight to Plaintiff's treating physician, Dr. Huynh. ECF No. 7-1 at 23. Specifically, Plaintiff faults the ALJ for not explicitly considering the frequency, length, nature, extent of treatment, the amount of medical evidence supporting the opinion, the consistency of the opinion with the remaining medical evidence, and whether the physician is a specialist. *Id.* at 25. Plaintiff contends that instead, the ALJ cherry-picked the record to justify discounting relevant evidence and rejecting Dr. Huynh's opinion. *Id.* at 29. The Court discusses each argument in turn.

Plaintiff filed her claim prior to March 27, 2017, at which time the treating physician rule was still in effect. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017) (summary order). Under the treating physician rule, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotation modified). However, an ALJ may discount a treating physician's opinion if it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

When the ALJ does not afford controlling weight to the medical opinion of a treating physician, she must comprehensively consider several factors, the so-called "*Burgess* factors," and set forth the reasons for the weight assigned to the treating physician. *Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *2 (2d Cir. Dec. 20, 2022). "Under *Burgess*, the ALJ must (1) decide whether a treating physician's medical opinion merits controlling weight and, (2) if it does not, then determine how much weight, if any, to give it based on certain factors such as length of treatment and type of health care provider." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 (2d Cir. 2021) (summary order) (quotation modified). The ALJ's "[f]ailure to provide good reasons for not crediting the opinion of a [Plaintiff's] treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotations omitted). However, remand is not required where the application of the correct legal principles to the record could lead only to the same conclusion. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (the ALJ's decision should be affirmed if a review of the record assures the court "that the substance of the

treating physician rule was not traversed," *i.e.*, if the record otherwise provides "good reasons" for assigning less than controlling weight to it).

Plaintiff is correct that when affording "little weight" to Dr. Huynh's opinion, the ALJ did not explicitly discuss the frequency, length, nature, and extent of treatment, or the specialties of Dr. Huynh. Tr. 1420-21; ECF No. 7-1 at 25. Notwithstanding, the ALJ provided sufficient "good reasons" for the weight she assigned to the opinion. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (the ALJ need not undertake a "slavish recitation of each and every factor" where the ALJ's "reasoning and adherence to the regulation are clear").

Here, the ALJ explained that she gave little weight to Dr. Huynh's opinion in which she concluded that Plaintiff needed to be limited to part-time work and could not sustain any reasonable degree of sedentary work because her opinion was "inconsistent" with Plaintiff's lack of presentation of distress, discomfort, deficits in gait, and the fact that Plaintiff exercised and worked during that period. Tr. 1421. In addition, the ALJ considered that Dr. Huynh's records showed that Plaintiff had reported lots of traveling, and that she had worked as a leasing agent ten hours per day on a full-time schedule for the preceding four months prior to September 2018. Tr. 1420. Further, the ALJ noted that Plaintiff's request for a work note from Dr. Huynh included "unspecified limitations" and Plaintiff's desire to be excused from work due to pain, yet Dr. Huynh had not indicated anywhere that she appeared to be in any distress. *Id.*

The ALJ also relied on records from Dr. Klymochko, weight-loss consultant Dr. Campbell, Dr. Scott, and Dr. Mirabelli, who all noted that Plaintiff did not appear in distress. Tr. 1418-20. Further, the ALJ relied on records from Dr. Rigby, who evaluated Plaintiff for headaches, and who also noted Plaintiff appeared well and was in no acute distress. Tr. 1418. In addition, the ALJ relied

on records from a surgical consultation, among other evidence, where Plaintiff reported her pain had resolved. Tr. 1417.

As such, the Court concludes that the ALJ gave "good reasons" for giving little weight to Dr. Huynh's opinion. *See Snell*, 177 F.3d at 133 (2d Cir. 1999). In her decision, the ALJ explained why she found Dr. Huynh's opinion finding that Plaintiff was limited to part-time work and unable to do sedentary work to be inconsistent with Plaintiff's lack of presentation when it came to discomfort, gait issues, and distress. Tr. 1421. Therefore, the Court finds no reason to disturb the ALJ's evaluation of the medical opinion of Dr. Huynh. *See Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (summary order) ("Supported by ample treatment notes, physical examination findings, and [plaintiff's] testimony, the ALJ's assignment of less than controlling weight to [plaintiff's] treating physician's opinions was not in error.").

Plaintiff also argues that the ALJ cherry-picked the record to discredit Dr. Huynh's opinion. ECF No. 7-1 at 28. Cherry-picking can be defined as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id.* (quoting *Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)). The Court rejects Plaintiff's cherry-picking argument. The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle her to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4. As discussed above, the ALJ's rejection of Dr. Huynh's opinion is reasonably supported by the record. Thus, it "must be given conclusive effect" even if "the administrative record may also

adequately support contrary findings on particular issues." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

For the reasons above, remand is not warranted on this ground.

**CONCLUSION**

For all the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 29, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York